Knauf Fiber Glass GmbH v. Certainteed Corporation. Mr. Reisner. May it please the Court. Over the eight years that the prosecution of the patents in suit lasted, not a single prior art reference was provided to the patent office. And the patentees and their attorneys repeatedly made arguments regarding the validity of their application that could not have been made had they disclosed Knauf's own Ductliner M product and its 28 pound Man and Glass 1296 mat. Now the Court correctly. But obviously it seems to me that that didn't have an effect on the prosecution because the examiner said I disagree with you. He read as to the reading of two of these prior art references and he read those prior art references as disclosing the same thing that the Ductliner M would have disclosed. So the question is, it seems to me what you're arguing, is that there was a lack of candor in not providing Ductliner M and perhaps a lack of candor in distinguishing those earlier references. But the bottom line is it had no effect on the prosecution because the examiner disagreed and found the mat finish disclosed by the prior art references. And indeed he kept finding that the claims were obvious. So it seems to me you have a situation in which at worst there is a lack of candor in the course of the prosecution as to something which made no difference at all because of the way the examiner disposed of it. And we do have cases on this which it seems to me suggest that no harm, no foul in the course of the prosecution. Of course the Court's other cases specifically point out that it is not the views of the particular examiner that handled the prosecution that matter, but those of the reasoning. No, that's not what I'm talking about. No, no, no. That's not the question. The question is if it didn't impact the prosecution, does it matter? Well, it would have impacted. It couldn't have been cumulative for several reasons other than the fact that the only evidence in the record was the submissions of Knopf's own personnel to the patent office explaining that the patent examiner in fact misunderstood the teachings of the references. The fact that he ultimately allowed claims to issue that consisted of nothing more than a duct board with a matte facing clearly indicates he changed his mind. Are you familiar with the Fox case and the Kimberly-Clark case and the Adelante cases? Yes sir. Okay. Well, those cases, as I read them, suggest that if there was inequitable conduct at the patent office with respect to a claim which didn't issue, that that does not invalidate the patent as long as there was no connection between the inequitable conduct and the claims that did issue. In this case, the inequitable conduct goes directly to the claims that did issue. The 268 patent claim 1 covers nothing more than a duct board with a matte facing. In this case, and there are dependent claims... Yes, yes, yes. But the problem that you have is the examiner said, I read these two prior art references as showing the matte attached to the flexible duct. And that's the thing that you say was disclosed by Duct Liner M. He didn't need Duct Liner M. He said, I read these prior art references as disclosing this. In his first notice of allowance, the examiner specifically stated that he was allowing the prior art references that he had found taught the basis weight of the preferred matte. Had they disclosed Duct Liner M and its 28-pound Manning glass 1296 matte, and had the examiner known that the Lidell Manning Corporation had been selling polyester glass mattes specifically for use as airstream facings in fiberglass duct liners, and that Knopf had been using a 28-pound matte for years before its alleged invention, they couldn't have made the argument and he couldn't have agreed with it. The prior art taught the weights. Lidell Manning distinguished its different matte facings based on various parameters, including their weight. Let's do a hypothetical. Let's suppose that they say to the examiner, there's no such thing as a matte faced duct liner. And that's a permanent misrepresentation. The examiner says, I disagree with you. I think this prior art reference shows exactly that, and goes on to examine the claims on that basis. Is that a basis for invalidating the patent? Or the examiner says, no, I disagree with your statement. I think the prior art does disclose this, and goes on, and there's no consequence to the misrepresentation in the course of the prosecution. Is that inequitable conduct? I guess I don't understand the relationship between your hypothetical and the facts in this case. Well, that may be, but that happens sometimes. But it didn't happen in this case. No, but you have to answer the hypothetical question, even if you think it doesn't have anything to do with this case. What's your answer to the hypothetical? That is irrelevant to the case, Your Honor. You can't answer the hypothetical? I'm afraid I don't see how the hypothetical applies in this situation. Yeah, but we are allowed to ask hypothetical questions. You're not allowed to say, I'm not going to answer them. You're supposed to answer the questions you're asked. I asked you a hypothetical question. What's the answer to it? The court is supposed to make its own evaluation of the prior art, and not merely rely on what the examiner said. The examiner got it wrong here, and the fact that he ultimately issued the patent indicates he changed his mind. You're not going to answer my hypothetical? I'm sorry, Your Honor. I guess I lost the train of the hypothetical. The hypothetical is this. There's a misrepresentation that there is no such thing in the prior art as a matte-faced liner. The examiner says, ridiculous, I see this in the prior art, and I'm going to treat it as present in the prior art during my examination. Is that misrepresentation inequitable conduct under those circumstances that can invalidate the patent? It would depend on the claims of the patent that issued in light of his acknowledgement of the prior art that he thought was there and whatever claims were issued. Without knowing what the claims were, I can't say whether it's inequitable conduct or not. But in this case, there's no dispute they knew about the art. The court nonetheless exonerated the attorneys, even though there was not literally a shred of evidence regarding why they failed to disclose duct liner M or its manning glass matte. The manning glass matte itself was prior art. It could not have been cumulative. They got a host of claims directed to the properties of the matte. The properties of the matte were the same matte used for years by Knopf and its duct liner M that were used and claimed as the best mode. The court, they had to be the same because otherwise the best mode requirement would have been violated. So not disclosing the 28-pound manning glass matte was critical to the exact point of novelty of numerous claims that were issued. The inequitable conduct issue ultimately is a judgment, equitable judgment call by the district judge was commented very favorably on the fact that Knopf withdrew as soon as the prior art of significance was shown to them. They dismissed their claim. The court thought that was the right thing for them to have done. And secondly, the district court was very specific about saying he believed the testimony that these folks had made. Folks didn't know or were misinformed by themselves or didn't have the requisite intent. All that's in the record. He held that they believed the differences between flexible duct liners and rigid duct board were so great that there was no information about its duct liner that would have been material. That's right. And that there was no intent on their part to mislead the PTO. Of the inventors, yes. Okay. Now, when we get all done with that, what are we supposed to do with it? What do you want us to do with it? Let's look to the attorneys and not the inventors. There's not a shred of evidence about the attorneys. The attorneys knew about the prior art. They offered no explanation. You want some, and this court has said you need independent evidence of wrongful intent in addition to merely withholding highly material prior art. In this case, certainty identified eight or nine specific arguments that were made to overcome art cited by the examiner that could not have been made had they disclosed duct liner M and its manning glass mat facing. The court simply ignored those. With regard to the Barnes and Thornburg attorneys, there isn't even a single finding of fact about their role in the prosecution, which is not only did they not remember a single thing about the prosecution, they professed not even to be able to understand the product being described in the specification sheet for the manning glass 1296 mat. Now, a finding of fact, it's an abuse of discretion to make a ruling in the absence of any evidence or make a finding of fact that has no evidence to support it. In this case, there is not a single finding of fact that couldn't have been made had they disclosed it for the simple reason that that was the invention. They took the mat off duct liner M and put it on their duct board. They couldn't have distinguished that combination had they disclosed that to the examiner because that was their invention. You also mentioned that Knopf had dismissed the case upon receiving certain prior art. Once again, the court abused its discretion in finding it was reasonable because certainty provided a 102 reference shortly after the case began, a Spanish price list that showed that mat-faced duct board with shiplap edges had been on sale in Europe for years prior to their alleged invention. Knopf never made an attempt before, during, or after the trial to distinguish that reference because there was no argument to distinguish it. Nonetheless, the court found that notwithstanding no argument made below, the court found, oh, it was reasonable to continue in the face of that reference because it didn't have a photograph of a duct liner covered with a mat facing covered the shiplap edge. This court has never required photographic evidence. Clearly, given that it was inherent in the manufacturing process, the judge was talking about not the lack of a photograph so much as evidence of the shiplap edge as I saw his reaction to that. The court said it was reasonable because they didn't know what process had been used to make the duct board that was advertised in the Spanish brochure, which clearly stated it had mat facing and a shiplap edge. But he said because the process wasn't known, they couldn't know that the mat covered the shiplap edge. But in that case, that was an entirely speculative finding on the judge without a shred of evidence to support it. All the evidence was that there is only one way to make mat-faced duct board. You put the mat on, it goes through the oven, the shiplaps get made, necessarily covering the shiplap edge. In fact, the examiner rejected the application, finding that exact fact, and the Knopf attorneys are convinced him to withdraw it, knowing that it was not only obvious for the mat to cover the shiplap edge, but that it was inherent in the manufacturing process. I put it to you that that is clear and convincing evidence that the withheld references were deliberately withheld with intent to mislead the patent office. Okay. We're well into your rebuttal time. Would you like to say some of it? Let's hear from Mr. Hunt. Thank you. May it please the court. I believe CertainTeed has alleged that essentially every person who has ever come in contact with this patent has engaged in some level of inequitable conduct or misconduct. All three of the inventors, including Mr. Hawk, who died before the patent even issued and the case was filed. Well, they really focused on the attorneys, did they not, who prosecuted the case? The attorneys who worked on the prosecution, as well as myself and my colleagues at my firm, who engaged in alleged litigation misconduct as well. Is the 865 patent invalid? I believe, based on the evidence that CertainTeed provided for the first time in a reply brief in a summary judgment motion showing, again, a foreign reference. I can't remember if it was a French or Spanish reference at that time. Appeared to depict, for the first time and I believe the only time, your honor, any piece of prior art that has that feature. I believe that it most likely is. This isn't particularly pertinent to the issues before us, but I find it a little troubling that we didn't end up with a stipulation of invalidity here and so the patent is sort of out there, but that's a question for another day. You know, we get this covenant not to sue and it sort of leaves the patent in limbo. I think that's not a good idea. I appreciate your concession that it's invalid. I believe that it most likely is, your honor. Let me address something that CertainTeed has now elevated to an absolute certainty when, in fact, there is no fact for it or basis for it at all. And the statement that was made even here today is that the Duct Liner M mat was, in fact, this Manning 28-pound mat and it had all these features. There is no evidence in the record for that. The evidence in the record was the very first time the inventors attempted to make this invention, this duct board product, they happened to use the same mat that was on the Duct Liner product. The only evidence of what that mat was, its characteristics, or its features was a document that was in evidence that simply describes it as a woven mat. None of the other features or characteristics of that product were known or are in evidence. The inventors then tried other products, other mats. There is no evidence that that is the same product that existed at that time. Let me understand something. As I read the record and the briefing, your lawyers made no attempt to put any prior art references before the PTO. Is that correct? Yes, that's correct. None of the lawyers who prosecuted the case submitted an information disclosure statement or submitted art. Of anything? That's correct. They left it entirely to the PTO to try to find out whether there was any prior art or to an alleged infringer at some later time? They did not submit any art to the Patent Office. I don't practice patent law myself, but is that customary? In my experience, it is not, Your Honor. Why would they have chosen to do it in this case, do you suppose? I don't know the answer to that. Mr. Staples was the lawyer who filed the application first in 1993. He was a witness in this case. He was deposed in this case. He appeared live at trial, and I don't believe that there's any evidence in the record as to why he did or did not. Or any evidence in the record as to why the lawyers later on who got involved in this case didn't concern themselves with that? I don't recall that there's any evidence of that. One of the other lawyers, Mr. Hull, was also associated with Mr. Staples and his firm. Approximately three or four years later, the file was transferred to a different firm and two attorneys from that firm, Mr. Resnick and Mr. Newman, all of whom were deposed and or offered live testimony at trial. And all of whom couldn't remember anything? Could not remember anything. Anything about it? I think that's a little unfair. In fact, Mr. Staples, the attorney who drafted the application and submitted it, did remember some of the details even 15 years later. Again, remember this application was filed at first in 1993, prosecuted through, I believe, about 1999 or so, and the trial took place in 2007. So the events in 2007 are already at least eight years removed from the latest portion of that file history, 15 years removed from the time when the application was first filed by Mr. Staples. So to say that there was no recollection of any of the details I think is a little unfair and not accurate. Of course, with respect to any allegation of withholding of prior art, CertainTeed had the burden of establishing materiality. And even today, with respect to the Duck Liner product that we hear about, we don't know of any of the features or characteristics of that product. We skip to, CertainTeed skips to materiality and assumes materiality, and yet this court requires first the finding of materiality by comparing the allegedly important or references that were already of record. Here we know that the Patent Office and the examiner had in front of them, the examiner had, references described as flexible Duck Liner products having a matte face. We don't know any more about the Duck Liner M product as it existed at that time other than that. There's no evidence that that... So once he made that determination, the Duck Liner M was cumulative. Absolutely, Your Honor. And of course, the district court found that it was cumulative. It could not be both material and cumulative. That's absolutely correct. And that obviously, according to the laws this court has established, it cannot be. In a footnote, the court below described that process where the examiner had before him prior art related to flexible Duck Liner products. And it was in that footnote that he said that it was material. I think and would suppose, Your Honors, that the reference there meant that it was relevant, meaning that instead of assuming as the inventors believed that it was not even a relevant subject matter, but used the term material to mean it was a relevant subject matter. Well, I suppose what he might have meant was that it was material before the examiner decided that the prior art disclosed the same thing as the Duck Liner M. I suppose so. But it's clear that the trial court did do a thorough investigation and study of the prosecution history and of the prior art references and did conclude that, in fact, the Duck Liner M product and the information that the court had on that product was cumulative. Notwithstanding that, one of the employees at Knopf, Mr. Cunningham, not one of the inventors, provided information concerning that product to Mr. Staples. And Mr. Staples, at trial, testified that he understood that Duck Liner and Duck Board were not the same product but were different products. His recollection, he could not recall 15 years prior his exact thought process of why he did not disclose it. But he did testify that he would have considered it relevant if the inventors had thought that that was a different product. And, of course, in this case, the inventors went to great lengths and the trial court found, to be in honest and credible fashion, the many differences between those products and why they believed that there was no relevance or materiality to the Duck Liner M product. CertainTeed also suggests that, at some point along the way, somebody should have submitted a product called Tough Guard, a CertainTeed product. Again, there is no evidence in the record that any of the inventors knew of that. And there's no evidence in the record that any of the attorneys that submitted CertainTeed so willfully charges of misconduct knew of that either, save one, and that's Mr. Staples. Again, Mr. Cunningham, not an inventor, gained access to this product approximately a year after the application was first filed, gave that information to Mr. Staples, the attorney. Mr. Staples conducted an investigation and testified so at trial, determined based upon that investigation that it was not prior art and that there was no obligation. There's no evidence that anybody else associated with this prosecution was even aware of that product. There were some statements made by CertainTeed that there were other pieces of prior art. The district court dismissed most of them saying that there wasn't even sufficient information in the record to go into detail. Again, CertainTeed has not tied any piece of prior art to any person and established that that person, whether it's an inventor or an attorney, had knowledge of that particular reference and didn't submit it. At most, CertainTeed points to a statement that, well, from a Knopf employee, we gave our files to the attorney. That's the only support they have that could possibly link an attorney with any one of these references. At no point in time is there evidence in the record that establishes that within these vague files were any of these references. CertainTeed didn't ask any of the attorneys, were you aware of this exact specific reference, were you aware of it during this time period? Those questions were never asked. You want to talk about the conduct of the trial that they seem to focus on? I would like to do so, Your Honor. I believe it was not so much the conduct of the trial but the aspects leading up to the actual trial that are the subject of it. Two issues. One is that prior art, according to CertainTeed, was provided to Knopf during the discovery process and today that was represented to be 102 art. In fact, there is no evidence of that. And today an argument we heard that, well, it's 102 if you find that it was inherent. There's a feature of the claims of the Knopf patent that require this mat facing to cover the shiplap edge. There's a drawing of that shiplap edge in the patent itself and it's just a stair step. It's cut out on one side of this product such that the mat actually covers that stair step, if you will. The alleged 102 reference that was provided in discovery did not show that feature. In fact, no reference up until the reply brief in support of the summary judgment motion had that feature. So it's not even a 103 that you would say, here that feature is shown in one reference and the rest of the claim is shown in another. That feature did not exist in any of the references provided during the discovery. The response is, well, it was inherent. And we asked one of the inventors. What was inherent is when the inventor sat down to invent a process in which the mat would, in fact, cover that edge, by carrying out the process, it achieved that goal. There is no evidence in the record for true inherency, meaning it must and always is that way, that if you had a product that had this step or shiplap edge and wanted to adhere a mat to it in some way, it would necessarily cover that. And that evidence isn't in the record. So one position that CertainTeed makes is that this art was great art, was, in fact, not only not anticipatory art, but didn't render this claim obvious because it lacked this feature. And, of course, this court has recognized, I think in the B.F. Goodrich case, was decided that neither Section 102 or Section 103 enterprises are certain enterprises. And the suggestion that CertainTeed makes that, well, this is kind of close prior art, so sufficient that you should have dismissed your case and it was misconduct to do so, I think fails the bar. The second issue that's raised in CertainTeed's brief is that the motion to dismiss Knopf filed itself constituted misconduct because the request was made that CertainTeed's counterclaims be dismissed with prejudice. The trial court rejected that part, of course granted the motion to dismiss, did not dismiss CertainTeed's counterclaims with prejudice but without, but noted that, of course, the case from this court, which essentially established that protocol, the Supersat case, in fact, that was the circumstances. In that case, the alleged infringers' counterclaims were dismissed with prejudice. How raising a motion in which you seek relief, which has been granted at least once prior by this court, constitutes litigation misconduct, I do not know, but I do not think that that crosses that bar. Any other questions? No, ma'am. No more questions? Thank you, Mr. Hunt. Thank you. Mr. Reiser. Just to touch on a few points. It says there's no evidence of the properties of the mat. It simply ignores Mr. Newton's unequivocal testimony that the mat on Duck Liner M was exactly the same mat that was used on its mat-faced duck board and that the mat on Duck Liner M that the specification sheet, which although not prior art itself, in fact, described the properties of that mat, which had not changed. Moreover, Knopf's own development documents indicate that Lidell Manning Corporation distinguished its different mats based on their weight. Did the district court make findings of this identity you're telling us about? I'm sorry? Did the district court make findings of what you're telling us? The district court, no, the district court didn't make those findings, but that was the point. The evidence was uncontested. What Mr. Newton said was uncontested. The court said somehow that evidence did not establish that they were the same. But having testified that the only mat they ever used was the Mahoney Glass 1296 and the patent described that as the preferred mat, it necessarily had to be the same mat. Otherwise, the best mode requirement would have been violated. That's where they got the details, which were virtually identical, one or two slightly different, between the specification sheet for the Manning Glass mat and the description of the preferred mat in the patent itself. As to, once again, this court has clearly said that when there's evidence of material, you said it's cumulative, but it couldn't have been cumulative. No art showed the weight. The examiner said that in allowing the claims. He said, no art I found showed the weight of the mat. Clearly, Knopf knew the weight of the mat. It was a publicly available, off-the-shelf product, sold by that differentiating characteristic. To not disclose that goes to the heart of the invention. But for that, they would have never gotten their application. The examiner never would have agreed that, oh, yeah, the prior art doesn't show the weight. Well, that's exactly how they bought it. That's how they selected the mat they'd been using for years before the invention. I wanted to say, with regard to the inherency, their argument about the mat facing covering the shiplap edge, the testimony was unanimous. Certainty, Knopf, there's only one way to make mat-faced duckboard. You put the mat on, it goes through the oven, the shiplaps are made in the attachment process, and then the thing gets trimmed. There's no way for it not to cover the shiplap edge, and even the examiner, who knew nothing about the art to start with, found that. They convinced him to withdraw that rejection. Notwithstanding, it is inherent. To say that there might have been some other process that didn't cover it is pure speculation unsupported by a shred of evidence. Making a factual finding based on something that is no more than pure speculation is an abuse of discretion. What we've talked about here today is just the tip of the stick of misstatements and different types of misconduct, and I suggest that this is a case where clearly an egregious injustice was done in failing to award certainty attorney's fees, and this court should correct that. Okay. Thank you, Mr. Reisner.